IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Criminal No. 2020-49 |
| | ) | |
| v. | ) | |
| | ) | |
| JORGE ROMERO-AMARO, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

Defendant Jorge Romero-Amaro again requests the Court to reopen the matter of defendant's bail.  [ECF 149].  The United States opposes the motion.  [ECF 151].

On November 18, 2020, five individuals were intercepted on a boat traveling from St. Thomas to Puerto Rico at night, without lights.   As law enforcement authorities neared the vessel, the occupants tossed seven duffle bags overboard that, when recovered, were found to contain 433 pounds of a substance that tested positive for cocaine.   [ECF 2-1].

Defendant made his initial appearance before this Court on November 20, 2020 on a complaint charging him with violations of 8 U.S.C. § 841(a)(1) (possession with intent to distribute cocaine).   On November 24, 2020, after a preliminary hearing at which the government presented testimony that, among other things, defendant was known by law enforcement to "carry loads," and where Romero-Amaro was identified as the driver and owner of the subject vessel, the Court found probable cause for the charges.

The Court also conducted a hearing on the government's motion for detention.   At that time, defendant presented his mother, Brenda Amaro, as a potential third-party custodian.   She testified that defendant lives near to her with his girlfriend, that he pays child support, and that he

*USA v. Romero-Amaro*
Crim. No. 2020-49
Page 2

works in several areas, including as a marine mechanic, in construction, and as a private boat driver.   Cross examination revealed that according to his mother, defendant frequently travels by boat, but that she does not know when or where.   Defendant argued that he could be barred from working on boats as part of his release conditions.   The United States countered that, among other things, defendant had to be shot at to stop the vessel on the night of his interception.   At the end of the hearing, the Court took the motion for detention under advisement. On November 30, 2020, the Court found that although the defendant had presented sufficient evidence to overcome the presumption of detention that stemmed from the charge, the government had shown by the required quantum of proof that defendant presented both a danger to the community and a risk of flight such that the Court could not fashion release conditions.   [ECF 48].

On December 18, 2020, the United States filed an Information charging the defendant with conspiracy to possess and possession with intent to distribute cocaine.   [ECF 56].   The following February, defendant moved for reconsideration of detention, which the Court denied by Order dated March 9, 2021.   [ECF 115].

On March 18, 2021, a Grand Jury returned a six-count Indictment charging defendant with conspiracy to possess and possession with intent to distribute cocaine, conspiracy to possess and possession with intent to distribute a controlled substance on board a vessel subject to the jurisdiction of the United States, failure to heave to, and attempting to destroy property subject to forfeiture.   [ECF 118].   On August 13, 2021, the Court scheduled the trial of this multi-defendant case for March 28, 2022, finding it "necessary and in the interests of justice for the protection and well-being of the Defendants, the jury, the prosecutors, the witnesses, the Court's personnel and

*USA v. Romero-Amaro*
Crim. No. 2020-49
Page 3

the general public at large," given the challenges presented by the Covid-19 pandemic and the

requirement of social distancing.   [ECF 144] at 2-3.

On November 4, 2021, defendant filed the instant motion, acknowledging the "Covid-19

pandemic still presents a health risk and concern for the citizens and Court personnel."   [ECF 149]

at 1.   But, because there are a number of cases that have had to be continued due to the pandemic,

Romero-Amaro concludes that it is uncertain whether he will in fact go to trial in March 2022, and

he argues that his pretrial detention "is close to crossing the line of being a regulatory detention to

a punitive detention."   *Id*. at 1-2.   Defendant asks the Court to "avoid a potential due process

violation and grant him bail."   *Id*. at 1-2.   Romero-Amaro touts his ties to the community, the

availability of his mother as a third-party custodian, his "strong relationship with his mother and

grandfather," a "stable and strong common law relationship with his wife," whom he "treat[s] with

politeness and a great sense of care," his five-year-old child, and his "reputation in the community

as a humble and hardworking young man who excels in helping others whenever it is needed."

*Id*. at 2-3.   The government opposes release, arguing that under the relevant analysis, the duration

of defendant's pretrial detention here does not violate due process.   [ECF 151] at 3-4.

"It is undisputed that at some point, pretrial detention can 'become excessively prolonged,

and therefore punitive,' resulting in a due process violation."   *United States v. Torres*, 995 F.3d

695, 708 (9th Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 747 n.4 (1987)).    Where

a defendant challenges detention on the basis that its duration violates due process, "'the length of

a detention period will rarely by itself offend due process.'"   *United States v. Hodge*, 2018 WL

1123866, *8 (D.V.I. Feb. 23, 2018) (quoting *United States v. Orena*, 986 F.2d 628, 631 (2d Cir.

*USA v. Romero-Amaro*
Crim. No. 2020-49
Page 4

1993)).   In *United States v. Accetturo*, 783 F.2d 382 (3d. Cir. 1986), the Third Circuit set forth

factors for courts to consider in determining whether the extent of pretrial detention raises

constitutional concerns.   The *Accetturo* Court observed that:

> due process judgments should be made on the facts of individual
> cases, and should reflect the factors relevant in the initial detention
> decision, such as the seriousness of the charges, the strength of the
> government's proof that defendant poses a risk of flight or a danger
> to the community, and the strength of the government's case on the
> merits. Moreover, these judgments should reflect such additional
> factors as the length of the detention that has in fact occurred, the
> complexity of the case, and whether the strategy of one side or the
> other has added needlessly to that complexity.

783 F.2d at 388.   Applying the *Accetturo* factors, the District Court in *Hodge* ultimately concluded

that pretrial detention of 17 months before a first trial, and a total of 28 months up to the start of

the retrial, did not violate defendant's due process rights.   2018 WL 1123866, at *10.   "After

consideration of the relevant factors under the circumstances presented, courts have found pretrial

detention periods as long as forty-one months, thirty to thirty-three months, and thirty-two months

to be constitutional."   *Id*. at *8 (internal citations omitted).   Applying slightly different factors in

its analysis, the court in *Torres*, on which defendant relies, found that the 21-month pretrial

detention in that case did not violate due process noting, however, that the length of the detention

there was "approaching the limits of what due process can tolerate."   995 F.3d at 709.

Applying the *Accetturo* factors to this case yields the following.   First, the seriousness of

the charges cannot be overstated.   While presumed innocent, defendant stands accused of

conspiring with at least four other individuals to transport by vessel over 400 pounds of cocaine

between St. Thomas and Puerto Rico, with the intent to distribute the substance.   In addition,

*USA v. Romero-Amaro*
Crim. No. 2020-49
Page 5

defendant, as the captain, is charged with failing to heave to when law enforcement tried to intercept the vessel, and with attempting to jettison the contraband as interception became inevitable.   The controlled substances charges alone carry minimum penalties of 10 years and up to life imprisonment.   Moreover, the circumstances of the arrest and the evidence adduced at the detention proceedings demonstrates that the government's case on the merits is quite strong.

With respect to the strength of the government's proof that defendant poses a risk of flight or a danger to the community, the Court has already found that the government met its burden with respect to both showings.   As for the risk of flight, defendant admitted that he owns the subject vessel, and the evidence is that he works as a marine mechanic and private boat driver.   While facing the potential for a very lengthy sentence if convicted, and having such facility with boats in an island setting, defendant in these circumstances poses a great risk of flight.   With respect to dangerousness, the evidence was that not only was defendant transporting a large quantity of contraband when stopped, but also that he was known to law enforcement to transport controlled substances on other occasions.   The Court was persuaded then, and remains persuaded now, that considering the factors in 18 U.S.C. §3142(g), defendant presents a likelihood of danger to the community that release conditions will not mitigate.   Further, defendant's arguments here regarding his strong ties to his family and community add nothing to what the defendant previously submitted on his behalf.

As to the remaining *Accetturo* factors, the Court notes that the period of pretrial detention to date is 12 months, and that trial is scheduled to take place in another four months.   This would result in 16 months of pretrial detention.   Under the authorities discussed above, while lengthy,

*USA v. Romero-Amaro*
Crim. No. 2020-49
Page 6

this period of detention under these circumstances does not appear to be excessive such that a constitutional violation can be found.   This is so given the existence of the Covid-19 pandemic, which is the primary reason this matter has not proceeded to trial before now.   The Court acknowledges that neither party has contributed to the delay in any significant way, but unanticipated delay has nonetheless occurred.   However, the Court cannot here find that the length of defendant's pretrial detention amounts to punishment, or that it violates due process.   *See United States v, Wimbush*, 2021 WL 1811668, *6 (D.N.J. May 5, 2021) (finding no due process violation where "[d]efendant's continued detention serves two clear legitimate governmental objectives: (1) protecting potential jurors, court staff and personnel, and other individuals integral to the criminal trial process amid the COVID-19 pandemic and (2) ensuring the safety of the community in light of the circumstances surrounding Defendant's arrest and his criminal history.").

Accordingly, the premises considered, it is ORDERED that the motion for bond [ECF 149] is DENIED.

**DATED:**   December 2, 2021                        S_____
                                                                          **RUTH MILLER**
                                                                          United States Magistrate Judge